**Timothy S. DeJong**, OSB No. 940662
Email: tdejong@stollberne.com
**Elizabeth K. Bailey,** OSB No. 172956
Email: ebailey@stollberne.com
STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**Gary M. Klinger** (*pro hac vice* forthcoming)
Email: gklinger@milberg.com
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878

**Alexander E. Wolf** (*pro hac vice* forthcoming)
Email: awolf@milberg.com
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Telephone: 872.365.7060

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DANIELLE MANGONE, individually and on behalf of all similarly situated persons,<br><br>              Plaintiff,<br><br>  v.<br><br>FITNESS EQUIPMENT SERVICES, LLC d/b/a Sole Fitness, a Utah limited liability company,<br><br>              Defendant. | Case No.: 3:24-cv-00465<br><br>**CLASS ACTION COMPLAINT**<br>(Oregon Unlawful Trade Practices Act; Fraud)<br><br>JURY TRIAL DEMANDED |

Plaintiff Danielle Mangone ("Plaintiff") brings this class action complaint individually and on behalf of all others similarly situated against Fitness Equipment Services, LLC d/b/a Sole Fitness ("Defendant" or "Sole Fitness"). The allegations contained in this class action complaint are based on Plaintiff's personal knowledge of facts pertaining to herself and upon information and belief, including further investigation conducted by Plaintiff's counsel, as to the remainder.

## I.     NATURE OF THE ACTION

1.      This is a class action lawsuit brought to address Defendant's misleading and unlawful pricing, sales, and discounting practices on its website www.soletreadmills.com for Sole Fitness-branded exercise equipment (the "products"). Defendant advertises fake and inflated comparison reference prices to deceive customers into a false belief that the sale price is a deeply discounted bargain price.

2.      Anyone visiting the website who buys an item on "sale" from a regular price is being misled. So too is any person who buys an item on "sale" from a "stricken" regular price or a "stricken" MSRP. This is because that item has not been listed for sale or sold on the website, in the recent past and for a substantial period of time, at the regular price. Additionally, Defendant's MSRP is entirely bogus—it is an inflated sum at which Defendant rarely, if ever, offers or sells the products on the website. Yet Defendant's use of inflated reference prices, strikethrough pricing and discounting, and purported limited time sales all lead reasonable consumers to believe that the products in fact had been listed for sale or sold on the website at the regular price, in the recent past, for a substantial period of time.

3.      Further, because the website is the primary channel through which Defendant's products are sold, Defendant cannot claim that another comparable retailer listed or sold that exact same item for the regular price in the recent past and for a substantial period, let alone that the regular price is the market value.

Page 1 – **CLASS ACTION COMPLAINT**

4.      All or nearly all the reference prices on the website are false. They are not original, regular, or former prices. They are not genuine MSRPs. They are inflated prices posted to lure consumers into purchasing items from Defendant.

5.      Beyond that, Defendant's products sold on the website not only have a market value lower than the promised regular price or MSRP, but the market value of the products is also lower than the "sale" price.  By using false reference pricing and false MSRPs, Defendant artificially drives up demand for the products, and by extension drives up the price of the products. As a result, consumers received a product worth less than the price paid.  An example illustrates the point. Assume a company knows a product will sell in the marketplace at $30.  But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" at 60% off (i.e., $60 off).  Because consumers value products based on the regular price, and a sale conveys savings, the company can sell that $30 product for $40.

6.      As a result, consumers are deceived into spending money they otherwise would not have spent, purchasing items they would not have purchased, and spending more money for an item than they otherwise would have absent deceptive marketing.

## II.    PARTIES

7.      Plaintiff Danielle Mangone is a resident of the State of Oregon. She purchased products from the website and shipped them to her address in Oregon.

8.      Defendant is a Utah limited liability company headquartered in Salt Lake City, Utah. Defendant develops, markets, and sells fitness equipment for residential use, including treadmills, ellipticals, bikes and rowers.  Defendant has been in the business of developing, marketing, and selling exercise equipment throughout North America in interstate commerce since 2002 and continues to expand its presence in the US and internationally.

## III.    JURISDICTION AND VENUE

9.      This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (i) there are at least 100

Page 2 – **CLASS ACTION COMPLAINT**

class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one putative class member and one Defendant are citizens of different states.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.  As set forth herein, Defendant owns and operates the website, and marketed, sold, and shipped products to purchasers located in this district, including Plaintiff.

11.     Further, as set forth herein, Defendant has contacts in this district sufficient to subject it to the personal jurisdiction of this district as if this district were a separate state. Defendant continuously and systematically places goods into the stream of commerce for distribution in Oregon, maintains an interactive commercial website, offers to ship products to Oregon, and allows customers in Oregon to order products.  Exercising jurisdiction over Defendant is fair, just, and reasonable considering the quality and nature of Defendant's acts that occur in Oregon and which affect interests located in Oregon. Defendant has purposefully availed itself of the privilege of conducting activities in Oregon, and should reasonably anticipate being haled into court in Oregon.

## IV.     GENERAL ALLEGATIONS

### A.     Company Background

12.     On the website's home page, Defendant touts its quality products and describes itself as as follows: "The vision at SOLE has always been to design, manufacture, and distribute fitness equipment that not only delights, but offers cutting-edge durability and performance you can depend on, no matter your fitness level. Originally, our equipment was engineered for hotel use and despite our evolution into the home market, we have held on to the core belief of exceptional quality."

13.     The website's homepage also states that "SOLE Fitness is a US company located in Salt Lake City, Utah. We specialize in innovative and industry-leading fitness equipment."

Page 3 – **CLASS ACTION COMPLAINT**

14.     Defendant, through the website, has sold thousands of exercise equipment products products to consumers in Oregon and nationwide.

**B.     Defendant's False and Deceptive Pricing Scheme**

    **1.     The Products Are Not Regularly Listed or Sold on the Website at the Reference Prices**

15.     Defendant's business model relies on deceiving consumers with fake sales.  On the listing page for each of the products, Defendant prominently displays some form of sale where the products are supposedly marked down by a specific dollar amount.  But when one sale supposedly expires, another substantially equivalent sale is promptly instituted.  This cycle continues over and over.

16.     On any given date, all or nearly all of the products on the website are represented as being discounted from a substantially higher reference price.  On individual listing pages, the supposed markdowns are represented to the consumer by prominently displaying a "crossed-out" reference price next to the sale price.  Sometimes the stricken price is described as an "MSRP" and other times it is unqualified.  Exemplars are shown below.

<u>**F63 Treadmill on August 22, 2023:**</u>



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**F80 Treadmill on October 17, 2023:**



17.     In recent months, and on information and belief starting January 2024, Defendant began advertising an MSRP, regular price, and sale price concurrently on the same listing.  An exemplar is shown below.

**F63 Treadmill on January 24, 2024:**



18.     With respect to strikethrough reference pricing, Defendant employs these deceptive tactics to convey to customers that the product was at minimum listed ***on the website*** at the reference price, in the recent past, for a substantial period of time, but is now being listed and sold to the customer at a substantial discount. In other words, reasonable consumers would understand that the strikethrough reference price independently conveys that the product was listed or sold in

Page 5 – **CLASS ACTION COMPLAINT**

the recent past *on the website* at the reference price for a substantial period of time, but is now being listed and sold to the customer at a substantial discount.

19.     With respect to MSRPs, Defendant employs these deceptive tactics to convey to customers the price at which the product is generally offered—both by Defendant *on the website* and *in the marketplace*.  Because Defendant is the manufacturer and seller, reasonable consumers expect the manufacturer to have offered the products for sale at the MSRP, in the recent past and for a substantial time.  Further, when a reduction from the MSRP is advertised by the manufacturer, consumers believe they are receiving a genuine bargain off of the manufacturer's typical offering price.

20.     However, the reference prices and MSRPs are always a falsely inflated price because Defendant rarely, if ever, lists or sells items at these prices. The only purpose of the reference prices and MSRPs are to mislead customers into believing that the displayed price is an original or regular price at which Defendant usually lists and sells the item in the recent past and for a substantial time. As a result, Defendant falsely conveys to customers that they are receiving a substantial markdown or discount.

21.     For example, take the Sole F80 treadmill, one of the products Plaintiff purchased. On February 5, 2024, as shown below, the product was advertised as having an MSRP of $2,799, a regular (strikethrough) price of $1,899, and was on sale for $1,699.

<u>**F80 Treadmill on February 5, 2024:**</u>



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

22.     That sale was false and misleading. In the months and years prior, the product has never been offered for sale on the website at the MSRP of $2,799, and very rarely offered at the $1,899 reference price. When any sale purportedly expired, another comparable sale was promptly instituted, as confirmed by archived captures of the website shown below.

**F80 Treadmill on January 4, 2024:**



**F80 Treadmill on November 10, 2023:**



**F80 Treadmill on October 30, 2023:**



Page 7 – **CLASS ACTION COMPLAINT**

**F80 Treadmill on October 17, 2023:**



**F80 Treadmill on October 11, 2023:**



**F80 Treadmill on August 22, 2023:**



Page 8 – **CLASS ACTION COMPLAINT**

23.     As another representative example, take the SB700 exercise bike which Plaintiff purchased.  On February 5, 2024, as shown below, the product was listed on the website with a strikethrough regular price of $1,099 and a sale price of $549.

**SB700 Exercise Bike on February 5, 2024:**



**SOLE SB700 Exercise Bike (2020 Model)**

$549.99   $1,099.99   Save $550.00

24.     That sale was false and misleading. In the months and years prior, the product has never been offered for sale on the website at the regular price of $1,099, let alone for a substantial time or at the higher MSRP.  When any sale purportedly expired, another comparable sale was promptly instituted, as confirmed by archived captures of the website shown below.

**SB700 Exercise Bike on November 30, 2023:**



**SOLE SB700 (2020 Model) - Cyber Week SALE**

End-of-Year Additional Discount

Use: **Blowout50** at checkout for $50 off your fitness equipment purchase.

*Terms and conditions apply. See our FAQ page for more.*

$699.99   $1,099.99   Save $400.00

Page 9 – **CLASS ACTION COMPLAINT**

**SB700 Exercise Bike on May 30, 2023:**



**SB700 Exercise Bike on January 28, 2023:**



**SB700 Exercise Bike on September 25, 2022:**



**SB700 Exercise Bike on May 29, 2022:**



Page 10 – **CLASS ACTION COMPLAINT**

**SB700 Exercise Bike on June 7, 2021:**



**SB700 Exercise Bike on March 9, 2020:**



25.    This is not a new or isolated sales practice by Defendant, but continued regularly throughout at least 2023, 2022, 2021, and 2020, and on information and belief years earlier.

      **2.    The Reference Prices and MSRPs are not the Prevailing Market Prices of the Products**

26.    Separately, because Defendant's website is the primary and leading channel through which its branded products are sold, and the website belongs to the manufacturer, Defendant

Page 11 – **CLASS ACTION COMPLAINT**

cannot claim that the reference prices or the MSRPs are the prevailing market prices of the products.

27.     The reference prices and MSRPs are unsubstantiated and arbitrary, and have no correlation to the prevailing market prices or former prices of the products.  Defendant does not independently verify that the reference prices or MSRPs are the prevailing market prices at which the products are listed for sale by other retailers for a substantial period of time or in substantial quantities.   Far from it, Defendant at all times knew that the reference prices and MSRPs were not the prevailing market prices.

28.     Defendant's advertised reference prices and MSRPs are actually higher than the prevailing market prices for the identical products. Indeed, because Defendant consistently sells its products at prices significantly (i.e., 25% to 50% or more) lower than its advertised former prices and MSRPs, there is no reasonable basis to believe that Defendant consistently sells its products at prices 25% to 50% below the prevailing market prices. In competitive markets, the actual prices offered by vendors selling the same item tend to converge on the market price.

29.     Beyond that, on information and belief, Defendant has control over the prices advertised and charged for its products at third-party retail stores. Specifically, on information and belief, Defendant either (1) sells its products through third party retailers but is itself the actual seller (i.e., on Amazon.com), or (2) contractually regulates the prices third party retailers may offer such that these prices are consistent with the discounted prices on Defendant's website.

Page 12 – **CLASS ACTION COMPLAINT**

30.    For example, as shown above, Defendant consistently offers the SB700 on its website for a "sale" price of $549 to $799, with a regular price of $1,099 and/or an MSRP of $1,399.  As of February 5, 2024, Defendant is also selling the SB700 through Amazon.com at a sale price of $549.  But on the Amazon.com listing shown below, Defendant inconspicuously discloses that the "List Price" is *only* $799—***much lower than the regular price or MSRP shown on Defendant's website***—and further defines List Price as "the ***suggested retail price*** of a new product as ***provided by a manufacturer***, supplier, or seller."  This is confirmation that the MSRPs shown on Defendant's website are bogus.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

31.    As another example, as of March 12, 2024, the MSRP for an SB900 bike at Dick's Sporting Goods is the same as displayed on the sole fitness website, and the offering price is virtually identical. Website captures are shown below.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

### 3.    Consumers Suffered Economic Harm

32.    Defendant's products sold on the website have a market value lower than the promised "regular" price or MSRP, and as a result, consumers were harmed. As explained above, the reference prices and MSRPs are false and the products rarely, if ever, offered or sold at these prices on the website. Nor are the products regularly offered for sale at the reference prices or MSRPs by third-party retailers.

33.    Defendant's products sold on the website not only have a market value lower than the promised regular price and MSRP, but the value of the products is also lower than the fictitious "sale" price.  By using false reference pricing and false limited time sales, Defendant artificially drives up demand for the products, and by extension drives up the price of the products. As a result, consumers received a product worth less than the actual price paid.  Reasonable consumers would not have paid the prices charged had they known that the products were (1) rarely, if ever, offered for sale on the website at the reference prices or MSRPs, or (2) were rarely, if ever, offered in the marketplace at the MSRPs.

34.    Again, an example illustrates the point.  Assume a company knows a product will sell in the marketplace at $30.  But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" for a "limited time" at 60% off (i.e., $60 off). Because consumers value products based on the regular price, and a limited-time sale conveys additional savings, the company can sell that $30 product for $40. Defendant has done just that.

35.    The false reference prices and MSRPs deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

36.    False reference prices and MSRPs, such as those employed by Defendant, cause consumers to pay more than they otherwise would have paid for products and to buy products that they otherwise would not have bought. False reference prices and MSRPs also fraudulently

Page 15 – **CLASS ACTION COMPLAINT**

increase consumer demand for products. This fraud-on-the-market shifts the demand curve and enables retailers to charge higher prices than they otherwise could have charged.

   **C.     Research Shows That the Use of Reference Price Advertising Schemes Influence Consumer Behavior and Perceptions of Value**

   37.     Academic studies support the effectiveness of Defendant's deceitful pricing scheme. In an article titled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[1] Thus, "empirical studies indicate that, *as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases*."[2] Indeed, the Ninth Circuit observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

   38.     Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[3] The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[4]

   39.     In another publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with

---

   [1] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).
   [2] *Id.* at 56 (emphasis added).
   [3] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).
   [4] *Id.*

Page 16 – **CLASS ACTION COMPLAINT**

the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."[5]

40.    Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[6]

41.    The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[7]  This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[8]

42.    Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and in fact does, influence consumer behavior by artificially inflating consumer perceptions of a given item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

### D.    Plaintiff's Purchases from the Website

43.    On March 21, 2023, Plaintiff purchased an SB700 Bike - 2020 Model from Defendant's website.  To make her purchase, she navigated to the listing page for the product.  There, she saw the product advertised as having a "Sale Price $399.99" and a much higher "strikethrough" comparison reference price.  While Plaintiff does not recall the exact amount of the comparison reference price, based on counsel's investigation of archived copies of the website,

---

[5] Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[6] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[7] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990).

[8] *Id.*

Page 17 – **CLASS ACTION COMPLAINT**

the listing showed a comparison reference price of "MSRP $1,399.99" in strikethrough text. This is consistent with Plaintiff's recollection that the reference price was much higher than the alleged sale price.

44.    Plaintiff then purchased the product with the understanding that she was receiving all advertised discounts off the higher reference price. She paid $399.99 for her order.

45.    Similarly, on March 22, 2022, Plaintiff purchased an F80 Treadmill from Defendant's website.  To make her purchase, she navigated to the listing page for the product. There, she saw the product advertised as having a "Sale Price $1,599.99" and a much higher "strikethrough" comparison reference price.  While Plaintiff does not recall the exact amount of the comparison reference price, based on counsel's investigation of archived copies of the website, the listing showed either a comparison reference price of (1) "MSRP $3,599.98" in strikethrough text, or (2) "$3,599.98" in strikethrough text (with no mention of MSRP).  This is consistent with Plaintiff's recollection that the reference price was much higher than the alleged sale price.

46.    Plaintiff then purchased the product with the understanding that she was receiving all advertised discounts off the higher reference price. She paid $1,999.97 for her order after accounting for assembly, an equipment mat, and garage delivery.

47.    Plaintiff thus viewed and relied on the website's purported current and limited-time sale promotion. She relied on the above representations that the products each had a true regular price and market value of the stated reference price and MSRP, and in fact had been offered for sale on the website in the recent past at the stated reference price and MSRP on a regular basis for a substantial time.  And she relied on the representations that the products were truly on sale and being sold at a substantial markdown and discount for a limited time.

48.    Plaintiff reasonably believed that the higher strikethrough prices represented Defendant's usual and normal selling prices for the products.

49.    Plaintiff reasonably believed that the advertised reference price and MSRP was genuine and made in good faith.  She believed the reference price and MSRP was the price at

Page 18 – **CLASS ACTION COMPLAINT**

which Defendant's products were offered on the website for a substantial time, and was the usual and normal selling price for the products in the marketplace.

50.    A reasonable consumer would understand than an MSRP advertised by the manufacturer, on the manufacturer's own website, would be the price at which the manufacturer regularly offered the product, in the recent past and for a substantial time, on the website.

51.    As explained above, neither of the purchased products were regularly offered on the website at the strikethrough reference price or MSRP, let alone for a substantial time. Similarly, neither of the products were offered in the marketplace at the MSRP, let alone for a substantial time or in substantial quantities.

52.    The above-listed products Plaintiff purchased were not substantially marked down or discounted, and any discount she was receiving had been grossly exaggerated.

53.    Plaintiff would not have purchased the items at the advertised price, or would not have paid as much as she did, had Defendant been truthful. Plaintiff was persuaded to make her purchases because of the false sale based on false reference prices.

54.    Plaintiff continues to be interested in purchasing exercise equipment in the future, but she will be unable to trust and rely on Defendant's advertising, and so will not purchase from Defendant. Absent injunctive relief, Plaintiff cannot know whether Defendant's regular prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual.

**E.    Defendant's Deceptive Pricing Practice Violates Federal Law**

55.    The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes similar to the ones employed by Defendant, are deceptive practices that violate the FTCA.

56.    Pursuant to 16 C.F.R. § 233.1, entitled Former Price Comparisons:

Page 19 – **CLASS ACTION COMPLAINT**

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the *former price* is the actual, bona fide price at which the article was offered to the public on a *regular basis* for a *reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an *artificial, inflated price* was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a *reasonably substantial period of time*, in the *recent*, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level— $7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" *This is obviously a false claim*. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he *never offered the article at all*; he might feature a price which was *not used in the regular course of business*, or which was *not used in the recent past* but at some *remote period in the past*, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was *not maintained for a reasonable length of time*, but was immediately reduced.

57.    The FTCA also prohibits the pricing scheme employed by Defendant regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price.  Under 16 C.F.R. § 233.1:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so

Page 20 – **CLASS ACTION COMPLAINT**

insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

58.    The FTCA also prohibits retailers from offering fake limited duration sales.   See

16 C.F.R. § 233.5 which provides:

[Retailers] should not represent that they are selling at "factory" prices when they are not selling at the prices paid by those purchasing directly from the manufacturer.

…

They should **not offer an advance sale** under circumstances where they **do not in good faith expect to increase the price at a later date**, or make a 'limited' offer which, in fact, is not limited.

59.    The FTCA also prohibits retailers from advertising fictitious MSRPs and list prices,

contrary to Defendant's practices.  See 16 C.F.R. § 233.3 which provides:

(a) Many members of the purchasing public believe that a **manufacturer's list price, or suggested retail price**, is the **price at which an article is generally sold**. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that **list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer**.

. . .

(d) . . .  Typically, a list price is a price at which articles are sold, if not everywhere, then at least in the principal retail outlets which do not conduct their business on a discount basis. It will not be deemed fictitious if it is the price at which substantial (that is, not isolated or insignificant) sales are made in the advertiser's trade area (the area in which he does business). Conversely, **if the list price is significantly in excess of the highest price at which substantial sales in the trade area are made, there is a clear and serious danger of the consumer being misled by an advertised reduction from this price**.

(e) This general principle applies whether the advertiser is a national or regional manufacturer (or other non-retail distributor), a mail-order or catalog distributor who deals directly with the consuming public, or a local retailer. But certain differences in the responsibility of these various types of businessmen should be noted. A retailer competing

Page 21 – **CLASS ACTION COMPLAINT**

in a local area has at least a general knowledge of the prices being charged in his area. Therefore, *before advertising a manufacturer's list price as a basis for comparison with his own lower price, the retailer should ascertain whether the list price is in fact the price regularly charged by principal outlets in his area*.

(f) In other words, a retailer who advertises a manufacturer's or distributor's suggested retail price should be careful to avoid creating a false impression that he is offering a reduction from the price at which the product is generally sold in his trade area. If a number of the principal retail outlets in the area are regularly engaged in making sales at the manufacturer's suggested price, that price may be used in advertising by one who is selling at a lower price. If, however, the list price is being followed only by, for example, small suburban stores, house-to-house canvassers, and credit houses, accounting for only an insubstantial volume of sales in the area, *advertising of the list price would be deceptive.*

(g) On the other hand, a manufacturer or other distributor who does business on a large regional or national scale cannot be required to police or investigate in detail the prevailing prices of his articles throughout so large a trade area. If he advertises or disseminates a list or preticketed price in good faith (i.e., as an honest estimate of the actual retail price) *which does not appreciably exceed the highest price at which substantial sales are made in his trade area*, he will not be chargeable with having engaged in a deceptive practice. Consider the following example:

. . .

(i) It bears repeating that the manufacturer, distributor or retailer *must in every case act honestly and in good faith in advertising a list price, and not with the intention of establishing a basis, or creating an instrumentality, for a deceptive comparison* in any local or other trade area. For instance, a manufacturer may not affix price tickets containing inflated prices as an accommodation to particular retailers who intend to use such prices as the basis for advertising fictitious price reductions.

### F.    Defendant's Deceptive Pricing Practice Violates Oregon Law

60.    Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following class:

61.    Oregon law prohibits false reference pricing practices such as those perpetrated by Defendant. Oregon's Unlawful Trade Practices Act (UTPA) broadly prohibits: "Mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j).

Page 22 – **CLASS ACTION COMPLAINT**

62.    Oregon's UTPA explicitly prohibits reference price advertising which uses terms such as "regular," "sale," "originally," and "clearance" where the reference price was not in fact the retailer's own former price for the product. ORS 646.608(ee); ORS 646.885(1).

63.    Oregon's UTPA also explicitly prohibits reference price advertising which uses terms such as "____ percent discount," "$____ discount," "____ percent off" and/or "$____ off" where the reference price was not in fact the retailer's own former price for the product. ORS 646.608(ee); ORS 646.885(2).

64.    Defendant violated ORS 646.608(1)(u) and ORS 646.608(4), which make it unlawful to engage in any other unfair or deceptive conduct in trade or commerce which violates a rule established by the Oregon Attorney General.

    a.    As alleged above, Defendant violated Oregon Administrative Regulation 137-020-0010(6)(a) and (6)(g)(C), which deems unlawful Defendant's use of a reference price at which Defendant did not in good faith offer or make sales of the same or similar product *within the preceding 30 days* and also deems unlawful Defendant's use of a represented general price reduction which is not true as to each item offered for sale.

    b.    Defendant also violated Oregon Administrative Regulation 137-020-0010(6)(f), which deems it unlawful to advertise a reference price, "such as a manufacturer's list price, which the person can document as having been employed in good faith offers to sell the same or similar goods within his market area during the *preceding 30 days*."

65.    As explained above, Defendant's advertised reference prices and discounts on its website, including its "Sale" representations and strikethrough pricing, violate Oregon law because, based on the investigation of Plaintiff's counsel, Defendant's advertised reference prices are inflated and fictitious, and Defendant's products are always or almost always on sale.

Page 23 – **CLASS ACTION COMPLAINT**

### G.    Class Action Allegations

66.    Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> **Oregon Class:**
> All persons in Oregon who purchased one or more Sole Fitness exercise products from www.soletreadmills.com, during the Class Period, at a discount from a higher reference price.

67.    The Oregon Class is collectively referred to as the "Class." Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest.  Also excluded from the Class are persons or entities that purchased products from Defendant for purposes of resale.

68.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of entry of judgment.

69.    Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

70.    **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are in excess of 50,000 members of the Class.

71.    **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described herein.

Page 24 – **CLASS ACTION COMPLAINT**

72.     **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and her counsel intend to diligently prosecute this action.

73.     **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

   a.  Whether, during the Class Period, Defendant advertised false reference prices on products offered on the website.

   b.  Whether, during the Class Period, Defendant advertised price discounts from false reference prices on products offered on the website.

   c.  Whether the products listed on Defendant's website during the Class Period were offered at their reference prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their reference prices.

   d.  Whether Defendant's use of false reference prices on products offered on their website during the Class Period was material.

   e.  Whether Defendant had a duty to disclose to customers that the reference prices were fake "MSRP" or "former" prices in furtherance of sham sales.

   f.  Whether the members of the Class are entitled to damages and/or restitution.

   g.  Whether injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising.

   h.  Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

Page 25 – **CLASS ACTION COMPLAINT**

74.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

75.    The products at issue in the action are substantially similar in all material respects. Namely, the products were all advertised with a false reference price, advertised with a strikethrough reference price, advertised with a false sale price, and/or advertised with a fake expiration.  The products are also all manufactured and sold by Defendant and fall under the umbrella of exercise and fitness products.

## V.    TOLLING OF THE STATUTE OF LIMITATIONS AND DELAYED DISCOVERY

76.    All applicable statutes of limitations have been tolled by the delayed discovery doctrine.  Plaintiff and Class members could not have reasonably discovered Defendant's practice

Page 26 – **CLASS ACTION COMPLAINT**

of running perpetual sales, based on false reference prices, at any time prior to filing this class action litigation.

77.     A reasonable consumer viewing the website on multiple occasions would simply believe that a product is on sale for the limited time period represented on the website.  Short of visiting and checking the website for months continuously, a reasonable consumer would not suspect that Defendant's sales and pricing practices were false and misleading.  Nor would a reasonable consumer be able to ascertain the market value of the products being sold absent extensive investigation.

78.     Plaintiff did not learn of Defendant's deceptive practices alleged herein until commencing this action.

79.     As a result, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

<u>**FIRST CAUSE OF ACTION**</u>

**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (UTPA)**

**Oregon Revised Statutes § 646.605 et seq.**

**(On Behalf of the Oregon Class)**

80.     Plaintiff restates the preceding allegations as if set forth herein.

81.     The Oregon Unfair Trade Practices Act ("UTPA"), ORS 646.605 et seq., prohibits various forms of consumer fraud and unfair business practices.

82.     Civil action under the UTPA is authorized by ORS 646.638. It allows for recovery of actual damages or $200, whichever is greater, plus punitive damages, costs, and attorneys' fees.

83.     Defendant is a person as defined by ORS 646.605(4).

84.     Defendant is engaged in "trade" and "commerce" in Oregon by offering for sale goods with fake reference prices and discounts to Oregon consumers under ORS 646.605(8).

Page 27 – **CLASS ACTION COMPLAINT**

85.    The products sold by Defendant with false reference prices and discounts are "goods" that are or may be obtained primarily for personal, family, or household purposes under ORS 646.605(6).

86.    Plaintiff and the Class purchased the products advertised by Defendant for personal, family, or household purposes.

87.    The unlawful methods, acts, and practices alleged herein were committed in the ordinary course of Defendant's business. ORS 646.608(1).

88.    Defendant's unlawful methods, acts, and practices alleged herein were "willful violations" of ORS 646.608 because Defendant knew or should have known that its conduct was unlawful.  ORS 646.605(10).

89.    Defendant's advertising of reference prices and discounts on its website are "advertisements" as defined by ORS 646.881(1).

90.    Defendant's use of reference prices and discounts are "price comparisons" under ORS 646.881(2).

91.    Defendant's list prices are representations of its own "former prices" as defined by ORS 646.885.

92.    Defendant's misrepresentations and omissions, and related business practices, violated the UTPA:

    a.    Defendant represented its goods had characteristics or qualities that the goods did not have, specifically, that the goods had a value equal to the reference price when in truth they had a much lower true value. ORS 646.608(1)(e);

    b.    Defendant advertised goods with the intent not to provide them as advertised, specifically, that the goods had a value equal to the reference price when in truth they had a much lower true value. ORS 646.608(1)(i);

    c.    Defendant made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. ORS 646.608(1)(j);

Page 28 – **CLASS ACTION COMPLAINT**

d.  Defendant engaged in price comparison advertising in violation of ORS 646.883(2) by failing to comply with ORS 646.608(1)(j) and ORS 646.608(4). ORS 606.608(ee);

e.  Defendant engaged in price comparison advertising in violation of ORS 646.885(1) by using terms such as "regular," "reduced," "sale," "usually," "originally," "clearance," "liquidation," and/or "formerly" where the reference price was not in fact Defendant's own former price. ORS 646.608(ee);

f.  Defendant engaged in price comparison advertising in violation of ORS 646.885(2), which prohibits reference price advertising using terms such as "____ percent discount," "$____ discount," "____ percent off" and/or "$____ off" where the reference price was not in fact the retailer's own former price for the product. ORS 646.608(ee);

g.  Defendant violated ORS 646.608(1)(u) and ORS 646.608(4), which make it unlawful to engage in any other unfair or deceptive conduct in trade or commerce which violates a rule established by the Oregon Attorney General.

　　i.  As alleged above, Defendant violated Oregon Administrative Regulation 137-020-0010(6)(a) and (6)(g)(C), which deems unlawful Defendant's use of a reference price at which Defendant did not in good faith offer or make sales of the same or similar product *within the preceding 30 days* and also deems unlawful Defendant's use of a represented general price reduction which is not true as to each item offered for sale.

　　ii.  Defendant also violated Oregon Administrative Regulation 137-020-0010(6)(f), which deems it unlawful to advertise a reference price, "such as a manufacturer's list price, which the person can document as having been employed in good faith offers to sell the same or similar goods within his market area during the *preceding 30 days*."

Page 29 – **CLASS ACTION COMPLAINT**

93.      Plaintiff also violated the FTCA, specifically 16 C.F.R. §§ 233.1, 233.3, and 233.5 as set forth above.

94.      Members of the public are likely to be deceived by Defendant's conduct as alleged above.  Among other things, Defendant affirmatively misrepresented the reference prices of products, which thereby misled and deceived consumers into believing that they were buying products at substantially marked-down and discounted prices.  Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly listed or sold on the website for a substantially higher price in the recent past than they actually were, and thus led to the false impression that the products were worth more than they actually were.

95.      Defendant's representations that its products were on sale, that the sale was limited in time, that the products had a specific regular price or MSRP, and that consumers were receiving discounts, were false and misleading.

96.      In addition, Defendant had a duty to disclose the truth about its pricing deception, including, among other things, that the reference prices advertised and published on its website were not, in fact, prices at which Defendant's items were listed or sold  on the website in the recent past for a reasonably substantial period of time, but in truth, the products never were offered or sold on the website at the advertised reference prices. Defendant also failed to disclose that the expiration of any given sale would be followed by a substantially equivalent sale.  Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

97.      Defendant's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing they are receiving a product that is worth more than it actually is, by presenting a fake sale price.

98.      Defendant's representations were materially misleading to Plaintiff and other reasonable consumers. Consumers are heavily influenced by price, including significant price reductions of purported limited duration, as employed by Defendant's high-pressure sales tactics.

Page 30 – **CLASS ACTION COMPLAINT**

99.    Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above, believing that she was receiving a genuine discount of limited duration from a prevailing and genuine market or regular price, and that the products were regularly offered on the website at the false reference price for a substantial period.

100.    Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at minimum, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

101.    Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items she purchased from Defendant, or, at minimum, would not have paid as much for the items as she ultimately did.

102.    As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

103.    Plaintiff seeks, on behalf of herself and the Class: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief and/or restitution; and (4) attorneys' fees and costs. ORS 646.638(3); ORS 646.638(8).

104.    Plaintiff, on behalf of herself and the members of the Class, seeks an injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including putting a stop to the deceptive advertisements and false reference prices in connection with the sale of products on the website. Plaintiff and Class members are entitled to injunctive relief. The dissemination of Defendant's false and misleading advertising is ongoing. ORS 646.638(1); ORS 646.638(8)(c); ORS 646.636.

105.    A permanent injunctive is warranted because Plaintiff and the Class lack and adequate remedy at law. Injunctive relief is a prospective remedy and money damages are inadequate.

Page 31 – **CLASS ACTION COMPLAINT**

106.    This action was brought within the one-year statute of limitations under ORS 646.6.

107.    The delayed discovery rule and Defendant's fraudulent concealment toll the one-year statute of limitations. ORS 646.638(6). As a result, the Class Period extends back to the commencement of the false, misleading, and unlawful business practices alleged herein.

<u>SECOND CAUSE OF ACTION</u>

**FRAUD (INTENTIONAL MISREPRESENTATION AND CONCEALMENT)**

**(On Behalf of the Oregon Class)**

108.    Plaintiff restates the preceding allegations as if set forth herein.

109.    Plaintiff pleads this claim under Oregon law.

110.    Defendant made false or misleading statements of fact concerning the existence of and the amounts of price reductions because, as explained herein, (a) the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing (i) the merchandise was previously offered for sale and/or sold *on the website* at the higher reference prices on a regular basis for a reasonably substantial period of time, and (ii) were valued in the market at the advertised "regular" price, (b) the reference prices Defendant advertised are not prevailing market prices because the products were not sold elsewhere at the reference prices on a regular basis for a reasonably substantial period of time, and (c) Defendant falsely represents the products as on sale for limited time when in truth a new substantially equivalent sale is promptly instituted after the expiration of an existing sale.

111.    In addition, Defendant had a duty to disclose the truth about its pricing deception, including that (1) the reference prices advertised and published on the website were not prices at which Defendant's items had been offered and/or sold on the website in the recent past on a regular basis for a reasonably substantial period of time, (2) Defendant's products rarely (if ever) were offered or sold anywhere at the advertised reference prices on a regular basis for a reasonably substantial period of time, and (3) the expiration of any given sale would be followed by a

Page 32 – **CLASS ACTION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

substantially equivalent sale. Defendant, however, concealed this material information from consumers and the public.

112. Defendant knew that its representations were false when made, or at the very least, were made recklessly and without regard for their truth. Defendant knew that the items Plaintiff and the Class purchased had rarely, if ever, been offered or sold on the website at the substantially higher reference price in the recent past and/or in the prevailing market, and knew its sales were advertised with false expiration dates.

113. Defendant's representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

114. Defendant engaged in this fraud to the Plaintiff and the Class's detriment to increase Defendant's own sales and profits.

115. Plaintiff and the class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

116. Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items she purchased from Defendant or, at the very least, would not have paid as much for the items as she ultimately did.

117. As a direct and proximate result of the above, Plaintiff and the class have suffered damages in an amount to be proven at trial.

118. Plaintiff and the class are also entitled to punitive or exemplary damages. Defendant, through its senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice,

Page 33 – **CLASS ACTION COMPLAINT**

and/or oppression. Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiff and the Class. Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiff and the Class, and also because Defendant's deceptive conduct was done with a willful and knowing disregard of the rights of Plaintiff and the Class.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully prays for following relief:

a. Certification of this case as a class action on behalf of the proposed Class and any subclasses, appointment of Plaintiff as Class representative, and appointment of their counsel as Class counsel;

b. An award to Plaintiff and the proposed Class and subclasses of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits Defendant obtained from Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

c. An injunction ordering Defendant to cease the false advertising and unfair business practices complained of herein;

d. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

e. An award of nominal, punitive, and statutory damages where available;

f. Reasonable expenses and attorneys' fees;

g. Pre- and post-judgment interest, to the extent allowable; and

h. For such further relief that the Court may deem just and proper.

Page 34 – **CLASS ACTION COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the proposed Class, demands a trial by jury for all claims so triable.

DATED this 14th day of March, 2024.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: s/Timothy S. DeJong
    **Timothy S. DeJong**, OSB No. 940662
    **Elizabeth K. Bailey,** OSB No. 172956

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email:    tdejong@stollberne.com
        ebailey@stollberne.com

**Gary M. Klinger** (*pro hac vice* forthcoming)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone:    866.252.0878
Email: gklinger@milberg.com

-AND-

**Alexander E. Wolf** (*pro hac vice* forthcoming)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Telephone:    872-365-7060
Email:    awolf@milberg.com

Attorneys for Plaintiff

Page 35 – **CLASS ACTION COMPLAINT**